Mr. Justice Thimble
 

 delivered the opinion of the Court:—
 

 This was an action of debt, brought by Francisco Yllas, and Josef Antonio YUas, against Charles W.. Karthaus, on an arbitration bond, in the Circuit Court of the district of Maryland.
 

 The defendant, after oyer of the condition of the bond, pleaded, no award made, fee. The plaintiff replied, setting
 
 *226
 
 forth the award in
 
 hse.c verba,
 
 and assigning a breach; the defendants demurred generally, and"' the plaintiff joined in demurrer. The Circuit Court having given-judgment, upon the demurrer, in favouiyof the plaintiffs; the defendant has brought the case up, by writ cp error, for the consideration of this "Court.
 

 The first and principal ground relied on by the plaintiff in error, for the reversal of the judgment, is, that the award is not agreeable to the submission, in this; that two several distinct controversies, the first between the plaintiffs and the late' house o'f Charles W. Karthaus & Co., and the second between the plaintiffs and Charles W. Karthaus, individually, were submitted to the referees, and that they left the latter undetermined. The condition of the bond, after reciting, that certain disputes, differences, and controversies have arisen, and are still depending between the above bound Charles W. Karthaus, acting for his late house of Charles W. Karthaus & Co., and for himself and the above named Francisco Yllas y Ferrer, and Josef Antonio Yllas, See., “ refers the same to the referees named, and -their umpire, and binds the said Charles W. Karthaus, &c. to abide by and perform their awardso as such award, See. “ of the arbitrators, of and in the premises, be by them made and given up in writing, under their hands and seals, ready to be delivered to each of the said parties in controversy, in fifty days.”
 

 The arbitrators, and their umpire, within the time limited by the submission, made and delivei’ed their award in writing, • under their hands and seals, in the following words,' to wit: “We, the undersigned, Iieriry Child and Lewis Brantz, as arbitrators, .and Michael M’Blair, as umpire, acting in virtue of the annexed bond, or instrument of writing, do hereby award and adjudge, that the late firm of C. W. Karthaus & Co. pay to Francisco Yllas y Ferrer, and Josef Antonio Yllas, or their representatives, the sum of fourteen hundred and severity-five dollars,'for the balance of the general account current between the parties, and also the sum of thirteen hundréd and ninety-eight dollars, for a balance arising out of moneys received for the brig Arogante Barcelonese, and cargo; in which award, a parcel of cutlasses, or their proceeds, are considered as becoming the property of the said Yllas y Ferrer.”
 

 • It is plainly seen, from the face of the award, that the arbitrators have not contradistinguished between Charles W. Karth aus, as a member of the late Louse of Charles W. Karthaus & Co., and Charles W. Karthaus, as an individual,"unconnected with his late house. The. argument is, that this omission of the referees vitiates the award. It is said that this, being a conditional submission,
 
 ita quod,
 
 the arbitrators were bound to .pursue the submission strictly, and to 'award, of and
 
 *227
 
 concerning every matter referred? to them. In support of this argument, the counsel referred to Randall
 
 vs.
 
 Randall, 7
 
 East,
 
 80, and several other cases less apposite.
 

 That there is a class of cases in the books, in which arbitrators have been held to a more than ordinary strictness in pursuing the terms of the submission, and in awarding upon the several distinct matters submitted, upon the ground of the submission being-conditional,
 
 ita
 
 quod, is conceded. The case of Randall vs. Randall is a leading case of that class. Lord Ellenborough, C. J. in delivering the opinion of the Court, says: u The arbitrators had three things submitted to them; one was to determine all actions, &c. between the parties; another was to settle what was to be paid by the defendant for hops, poles, and potatoes, in- certain lands; the third was to ascertain what rent was paid by the plaintiff, to the defendant, for certain other lands. The authority given to the arbitrators, was conditional,
 
 ita quod,
 
 they should arbitrate upon these matters, by a certain day. The arbitrators have stopped short, and have omitted to settle .one of the subjects of difference stipulated for.”
 

 This- case was adjudged, according to the rule laid down in the books; that if the submission be conditional, so as the arbitrator decide of and concerning the premises, he must adjudicate upon each distinct matter in dispute, which he has noticed.
 
 Kyd,
 
 177.
 

 But the rule is to be understood with this qualification; that in order to impeach an award, made in pursuance of a conditional submission, on the ground only of part of the matters in controversy having been decided, the party must
 
 distinctly
 
 show, that there were other points in difference, of which express notice was given to the arbitrator, and that he neglected to determine them.
 
 Caldwell,
 
 105.
 
 Kyd,
 
 177.
 
 Cro. Car.
 
 216. Baspole’s case, 8
 
 Co.
 
 98. Ingraham
 
 vs.
 
 Milnes, 8
 
 East’s Rep.
 
 445.
 

 That Lord Ellenborough understood and intended to apply the rule, as thus qualified, in Randall
 
 vs.
 
 Randall, is manifest. For Mr. Espinasse,in commenting upon Baspole’s case, having observed, that it is said in' that case, that though there be many matters in controversy, yet if only- one bfe signified to the arbitrators, he may make an award for that, for he is to determine according to the
 
 allegata st probata
 
 — -and it is in every' day’s practice, that an award may be good in part, and bad in part. Lord Ellenborough, in answer to.that argument, replies — “ That is, where it .does not appear there is any notice to the arbitrator, on the face of the submission, that there is any other matter referred to him, than those which are mentioned, to him at the time of the reference. But here it does expressly appear, that there was another matter referred, on which there is no arbitrament.”
 

 
 *228
 
 In this casé, it is not pretended that any notice was given to the arbitrators of any other matter, unless that notice was given on the face of the submission.
 

 The question then is,’ does it distinctly appear, from the face of the submission, that any other point of difference between parties, was submitted, and of which the submission itself gave the arbitrators notice, but which they have neglected to determine.
 

 If, as the argument supposes, there was any point in difference, which concerned Charles W. Karthaus, individually, as contradistinguished-from the points in. difference which concerned him as Charles W. Karthaus, of the late firm of Charles. W. Karthaus & Co., what was.that point of difference?
 

 No ■ satisfactory answer has been given, and it is believed none can be given, to this inquiry. How then can it be maintained, that a distinct point in difference between the parties 'was referred, and by the reference itself notified to the referees, which they have neglected to.determine ? The case of Ingraham
 
 vs.
 
 Milnes is a strong authority to stow, that although the submission be conditional,
 
 ita quod;
 
 there must be a distinct specification, as in Randall
 
 vs.
 
 Randall, to sustain the objection, that part has been omitted by the arbitrators. Here the submission is in very general, and, we think,, in very vague and ambiguous terms. It speaks of disputes, differences, and controversies, between Charles W. Karthaus, acting for the late house of Charles W. Karthaus 8c Co., and for himself and the plaintiffs. But hów, or in what he acted, for the one or the other, is.not' specified. The terms “late house,” imply the former existence, but present non-existence, of the late house pf Charles W. Karthaus & Co. He may be the only surviying-partner, the firm having ceased, by the death of the other members. But if the firm was continuing, .Charles W. Karthaus, while he must be admitted to be perfectly competent to submit tp reference his own interests in the firm, could' not, by his submission, bind his partners. He might bind himself to perform whatever, the award directed the firm of which he was a member,-to do; so that, either way, it was a submission of his own interest only. In order to overturn the award, it. is'not enough that he may have had different and distinct interests in his individual and in his partnership character. It is a settled rule, in the construction of awards, that no intendment .shall be indulged, to overturn an award, but every reasonable intendment shall be allowed, to uphold it. Thus, if a submission be of all actions, real and personal, and the award be only of actions personal, the award is good — for it shall be presumed no actions real were depending- between the parties.
 
 Kyd,
 
 72, and B aspóle’s case, before cited.
 
 *229
 
 So in this case, although the submission.speaks,'in general terms,' of disputes, differences, and controversies, with Charles W. Éarthaus,. acting for his late house- of C. W. Karthaus & Co. and for himself; it shall not be intended there were any controversies with C. W. Karthaus, individually, other than those decided by the arbitrators. If any such did exist, inasmuch as they are hot specifically .and distinctly set forth in the submission, so as to give notice to the arbitrators, it was the ' duty of the party to show, by averment and proof aliunde, they w.ere brought before the referees.
 

 There is no analogy between this case and Lyle
 
 vs.
 
 Rogers,
 
 5 Wheat.
 
 394, cited at the argument. In that case, it was decided, that where claims against a party, both in her own right, • and in her character of administratrix, were submitted to arbitrators; it was a valid objection to the award, that it awarded a gross sum to be paid by her,-without distinguishing between-what wa's to be paid by her in her own right, and what in her representative character The Chief Justice,-in delivering the opinion of the Court, explains the reason and ground of thede-' cisión, by observing, “ if this award was.made against Mrs. Dennison, as administratrix, she would not only be deprived by its form, of the right to plead a full administration, (a defence which might have been made before the arbitrators, and on which their award does not show, certainly, that- they have decided ;) but also" of the. right to use it in the settlement of her ■ accounts, as conclusive evidence, that the money was paid in her representative character. If this objection to the award is to be. overruled, it must be’ on the supposition that it is made against her personally; yet the státement of facts shows the claim against her to be in her representative .character.” This' reasoning cannot apply to the case before the Court. It is of no sort of consequence to C. W. Karthaus, whether he is directed to pay as Charles W. Karthaus, individually, or as Charles W. Karthaus, of his late house of C. W-. Karthaus 8c Co. In each case-he is bound, personally, to pay, having bound himself so to do by'the submission; -and the award, if in any case it would be evidence for him against the firm, would not be conclusive, as he had no power to bind his partners, if any existed, by his submission. It is objected- that the award is' not certain, final, and mutual. It was said, in argument, that' as the first sum awarded, is expressed to be for a “ balance of the general account current, between the parties;-the general account current, must be understood to include all accounts be- - tween them; and hence, that the second sum awarded, for a balance arising out of moneys received for the brig Arogante Barcelonese, is included in the first, Nand the. party thus twice charged; or at least, that it does not certainly appear otherwise.”
 
 *230
 
 We think there is no. foundation for this argument. To indulge such a.supposition, would impute either manifest injustice, or gross negligence, to the referees. Great stress was laid, in the argument, on the uncertainty of the closing'clause of the award, in these words, “in which award,-a parcel of cutlasses are considered as becoming the property of said Yllas y Fer-rer.” There is considerable doubt arid uncertainty, as to the meaning of the arbitrators, in the use of these terms. And had this uncertainty appeared in any part of the award, intended for the benefit of the defendant, it would, perhaps, be fatal to the whole award. Had that been the case, it would be hard and unjust, to compel him to perforin that part of the award which is onerous to him, when he could not have, on account of its uncertainty, that which would be beneficial to him. But, however doubtful the precise intent and meaning of this part of the award may be, it is ■ certainj it was intended as á benefit in some way, to Yllas y Ferrer, over and above the two sums of money directed to be paid to the plaintiffs. The defendant can have no reason to .complain that the plaintiffs, or either of them, may not, on account of this uncertainty, be able to obtain all the benefits intended by the award; nor can it furnish any reason for withholding from them, that to which they are certainly entitled.
 

 It is deemed a sufficient answer, to the objection of want of mutuality in the award, to remark, that great stress was laid, in the-early cases, upon the mutuality of an award; but at present, it^is by-no means-considered necessary that each party should be directed to do, or not to. do-, any particular thing,’
 
 Cald.
 
 113. Two had submitted to an award; nothing, was awarded as to one party, but that all actions should cease. The Court held it a good award, Harris
 
 vs.
 
 Knight. 1
 
 Levz,
 
 58.
 

 In Palmer’s case, 12
 
 Mod.
 
 234, one party was directed to pay money to the other, without any directions being given to the latter in any way; and, again, it was awarded that A should pay B 40 shillings for a trespass; Freeman, 204. The respective awards were considered unimpeachable: These cases fully establish the principle above laid down. An award is regarded as final, when it is an absolute conclusive adjudication of the matters in dispute; and there-is no reason to doubt the conclusiveness of the adjudication in this case, as to the two sums of money directed to be paid; and that the award will operate as a bar to any future litigation, upon the accounts for which they are given. Again: It is objected that the award directs an act to be done by strangers. This objection grotvá out' of the direction in the award, that “the late firm of C. W. Karthaus & Co. pay, &c.” Whatever might be the forcé of this objection, if it were true in point of fact, we cannot so regard it. So- far as
 
 *231
 
 appears upon the record, the late firm or house of C. W. Karthaus & Co. and C. W. Karthaus are one and the same person; or more properly speaking,it does not appehr.that there is any other person,
 
 in esse,
 
 belonging to that firm, than C. W. Karthaus himself. If there be any other person,
 
 in esse,
 
 of the late house of C. W. Karthaus & Co. it cannot be truly affirmed that he, and the house of which he was a partner, are strangers to each other. But we cannot, consistently with the rules of law, presume or intend there is any other; indeed, in support of the award, it may reasonably be intended there is not, as the party objecting was cognizant of the fact, and might have shown it, if true, but has not. The direction that the late firm of C. W. Karthaus & Co. shall pay, unquestionably includes C'.'W. Karthaus; and no other person appearing to exist, it is equivalent to a direction that he shall pay. This reason is applicable to the last ground assumed by the counsel for the plaintiff in error, for a reversal of judgment; namely, that the replication is insufficient, because, in assigning a breach, it only alleges C. W. Karthaus had not paid. As no other was, or could be bound by the submission and award, to .pay, and he .was bound; it was a sufficient assignment of a breach of the condition of his bond, to allege that he had not paid the money, awarded in favour of the plaintiffs.
 

 Upon the whole, it is the opinion of this Court, that there is no error in the judgment of the Circuit Court, and the same is ■ affirmed, with costs and damages.